**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Dale Gibson, Sr., <br><br> Plaintiff, <br><br> v. <br><br> Commissioner of Social Security Administration, <br><br> Defendant. | No. CV-17-3914-PHX-DMF <br><br><br> **ORDER** |

Plaintiff Robert Dale Gibson, Sr., appeals from the denial of his application for benefits from the Social Security Administration. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and, with the parties' consent to Magistrate Judge jurisdiction, pursuant to 28 U.S.C. § 636(c). The Court will remand for an award of benefits.

## Standard of Review

This court must affirm the ALJ's findings if they are supported by substantial evidence and are free from reversible error. *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence is more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence supports the ALJ's decision, the court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir.

1998). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990). Thus, the Court must affirm the ALJ's decision where the evidence considered in its entirety substantially supports it and the decision is free from reversible error. 42 U.S.C. § 405(g); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

**Analysis**

In August 2014, Gibson was evaluated at the request of the State agency by Robin Potter, Psy.D. (Tr. 845-57) In her subsequent written report, Dr. Potter concluded that Gibson had Post Traumatic Stress Disorder, Chronic; Major Depressive Disorder, moderate; Anxiety Disorder NOS; and Alcohol Abuse [as per history]. She also concluded that he did "not appear COMPETENT to manage benefit payments." (emphasis in original) (Tr. 854)

In her opinion, the ALJ found that Gibson was not disabled and, in doing so, gave Dr. Potter's opinion "partial weight." (Tr. 30) The relevant paragraph of the ALJ decision stated as follows:

> The undersigned gives partial weight to the opinion of consultative examiner, Robin Potter, Psy.D., that the claimant would have moderate problems in a work-like setting with regard to his persistence and his poor affect tolerance and that his prior aggravated assault charge would likely be a significant problem in a work setting. Dr. Potter's opinion that the claimant would have moderate problems with regard to his persistence is not fully consistent with the facts that the claimant normal mental status examinations, his memory became stable on Aricept, and his cognitive performance on tests was questionable, Ex. B23F/2; B29F; B40F/1. He can persist to drive, to participate in group therapy, to watch TV shows and to play computer games on the phone.
>
> However, the undersigned agrees with Dr. Potter's assessment that the claimant would have some problems socially due to the claimant's prior problem with anger management. Nevertheless, the undersigned finds that the claimant has developed skills to work with others after attending group sessions, a fact that Dr. Potter, herself, noted in her report. Ex. B11F/13

(Tr. 30) On appeal, Gibson argues that the ALJ should not have discounted Dr. Potter's opinion. (Doc. 24 at 1-2)

Assuming without deciding that Dr. Potter's opinion was controverted by the State agency's medical consultant, the ALJ needed to justified the reduced weight by providing

"specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995). (Tr. 29) The Court has reviewed the relevant portions of the record and concludes that the ALJ has not provided sufficient reasons for discounting Dr. Potter's opinion.

First, the ALJ pointed to Gibson's "normal mental status examinations." (Tr. 30) The accompanying citations did not refer to a mental status examination but Gibson did have a neuropsychological examination in April 2013 that included a Mini-Mental Status Exam ("MMSE").[1] (Tr. 382) Dr. Potter also administered a Mental Status Exam. (Tr. 853) Gibson's score was 28/30 in April 2013 and 27/30 with Dr. Potter in August 2014. (Tr. 382, 853) In other words, Dr. Potter made her recommendations about Gibson's capabilities based on a 27/30 score. The ALJ opinion does not explain, and it is not apparent to the Court, how a 28/30 score is so inconsistent with a 27/30 score that it can justify assigning reduced weight to Dr. Potter's opinion.

Next, the ALJ notes that Gibson's "memory became stable on Aricept" and cites to a medical note where Gibson self-reported that he felt "better with Aricept. He thinks his memory is stable." (Tr. 30 citing 1416) Although its uses are not known to the Court, it appears that Aricept is a medication used for those suffering from memory loss.[2] This leads to the inevitable question about the reliability of a self-report about memory from someone who has been diagnosed with memory problems.

Finally, the ALJ noted that Gibson's "cognitive performance on tests was questionable." (Tr. 30 citing Tr. 1332-35) This statement appears to be the ALJ's interpretation of Gibson's neuropsychology assessment from September and October 2015. (Tr. 1332-35) The assessment concluded that "[h]is performance on symptom

---

[1] The ALJ opinion cited to B23F/2 which is a page from a Patient Progress Note written after one of Gibson's outpatient counseling session. (Tr. 1254) There is no reference to a mental status examination on this page or in this Note. (Tr. 1253-55) The MMSE, referenced elsewhere in the ALJ's opinion, was properly cited as B2F. (Tr. 28) It seems that the simplest explanation—an extra number added in error to the cite—is the most logical.

[2] The same medical note states that Gibson "was seen by Dr. Gorman for memory problems and was started on Aricept." (Tr. 1416)

validity testing was below optimal levels, which raises questions regarding the validity of the current cognitive tests. . . .his emotional/psychiatric status could not be validly assessed. Overall, performance validity was below optimal levels, which precludes an accurate/valid assessment of his current functioning at this time." (Tr. 1335) In other words, the neuropsychologist stated that the conclusions from his testing were "questionable" because the testing could not be validated. This is not the same as questioning his performance on the tests.

The ALJ's subsequent series of justifications—Gibson's ability to drive, participate in group therapy, watch television, and play games on his phone—do not show that Gibson can work and instead fall squarely into the category of daily activities that do "not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Accordingly, these explanations are not sufficient reasons to afford partial weight to Dr. Potter's opinion.

Elsewhere, the ALJ's opinion stated that Gibson was "adequately groomed at the exam with" Dr. Potter. (Tr. 37) This is an incomplete description of Dr. Potter's report which stated in the narrative Source Statement that Gibson "was unshaven and marginally groomed. He reportedly had not showered for a week and half. . . He appears overly dependent on his family to ensure that he showers and takes his medication." (Tr. 856-57)

Finally, at the hearing on this matter, Vocational Expert ("VE") Marcus Molinar testified. (Tr. 70-80) When presented with the limitations from Dr. Potter's opinion, VE Molinar testified that those restrictions "would preclude somebody from working." (Tr. 76) In other words, when presented with the opinion from the agency's consultative examiner, the agency's Vocational Expert concluded that someone with Gibson's limitations could not work.

. . .

. . .

**Remand**

The decision to remand a case for additional evidence or for an award of benefits is within the discretion of this court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989). The court can remand a case with instructions to award benefits when

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Here, all three parts of this test have been met. First, the record was fully developed for the fixed time period at issue and further administrative proceedings would impermissibly allow the "ALJ to have a mulligan." *Id.* at 1021. Second, as described above, the ALJ did not provide a sufficient explanation for rejecting the opinion of the consultative examiner. Finally, if the ALJ had provided great weight to Dr. Potter's opinion, the ALJ would have found that Gibson was disabled.

**IT IS THEREFORE ORDERED** that Robert Dale Gibson, Sr.'s claim for disability is remanded to the Commissioner of the Social Security Administration for an award of benefits.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

Dated this 10th day of October, 2018.

_____
Honorable Deborah M. Fine
United States Magistrate Judge